J-S11002-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1338 WDA 2025 |

Appeal from the Decree Entered September 26, 2025
In the Court of Common Pleas of Fayette County
Orphans' Court at No:  28 ADOPT 2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1339 WDA 2025 |

Appeal from the Decree Entered September 26, 2025
In the Court of Common Pleas of Fayette County
Orphans' Court at No:  27 ADOPT 2022

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED: July 17, 2026**

C.W. ("Mother") appeals from the September 26, 2025 decrees, which

involuntarily terminated her parental rights to her daughter, T.W., born in

October of 2018, and son, G.W., born in November of 2014 (collectively, "Children").[1] After review, we affirm.

This appeal follows our decision in *In re Adoption of G.W.*, 342 A.3d 68 (Pa. Super. 2025) (*en banc*), wherein we vacated orders that denied the petitions to involuntarily terminate Mother's parental rights to Children filed by Fayette County Children and Youth Services ("CYS") and remanded the case to the orphans' court to conduct a comprehensive needs and welfare analysis pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b), as interpreted by *In the Int. of K.T.*, 296 A.3d 1085 (Pa. 2023).[2] Upon remand, the orphans' court, based on the existing record, concluded that CYS established by clear and convincing evidence that Children's needs and welfare were best served by termination of Mother's parental rights. The orphans' court issued decrees involuntarily terminating Mother's parental rights pursuant to Section 2511(a)(8) and (b) on September 17, 2025, which were recorded on Children's adoption dockets on September 23, 2025. Mother filed timely

---

[1] By separate decrees, the court also involuntarily terminated the parental rights of Children's fathers in August of 2023. Neither father appealed nor participated in this appeal.

[2] There is no dispute with respect to the first prong of Section 2511(a)(8) insofar as Children have been removed from Mother's care far in excess of the statutory twelve-month minimum. In addition, *G.W.* concluded that the orphans' court abused its discretion in failing to find that CYS met its burden of proof under the second prong of Section 2511(a)(8), *i.e.*, the conditions that led to Children's removal continue to exist. *See G.W.*, 342 A.3d at 84-89. Therefore, we need not review the record evidence supporting the second prong of the subsection.

notices of appeal and contemporaneous concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following issues for our review:

1. Whether the orphans' court erred when it did not comply with the remand of this Honorable Court to conduct a needs and welfare analysis?

2. Whether the orphans' court erred in not allowing additional testimony to be presented following remand?

3. Whether the orphans' court erred in finding that Mother forfeited her parental rights to Children and that CYS's petition to terminate her parental rights was true and correct?

Mother's Brief at 16 (cleaned up).[3]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

_____

[3] Children's guardian *ad litem* did not participate in this appeal. Children's legal counsel filed a participant's brief in support of affirming the termination decrees.

- 3 -

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The relevant statutory provisions governing this matter are as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b); *see also G.W.* at 84-95.

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least twelve months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. **See In re Adoption of J.N.M.**, 177 A.3d 937, 943 (Pa. Super. 2018). Section 2511(b) requires that the orphans' court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); **see also In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013).

We recognized in **G.W.** that "our current precedent interprets the needs and welfare analyses required under subsections (a)(8) and (b) to utilize the same legal standards and to be based upon the same evidence." **G.W.**, 342 A.3d at 98, n.20 (citing **In re Adoption of C.L.G.**, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*) and **Matter of Adoption of M.A.B.**, 166 A.3d 434, 448 (Pa. Super. 2017)). In **G.W.**, this Court "interpret[ed] the two provisions congruently and us[ed] the same legal analysis" for both subsections. **G.W.**, 342 A.3d at 98, n.20. We further explained:

> When considering whether termination of parental rights serves a child's needs and welfare, courts must consider the matter from each child's perspective, placing the child's "developmental, physical, and emotional needs and welfare above concerns for the parent." **K.T.**, 296 A.3d at 1105-06. . . .
>
> When determining whether the petitioner met its burden to prove that termination best serves a child's needs and welfare, the orphans' court must consider, at a minimum, the factors delineated by our Supreme Court in **K.T.**, all of which are of

- 5 -

"primary importance in the Section 2511(b) analysis" and "may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare." ***K.T.***, 296 A.3d at 1109.

***Id.*** at 90.

Specifically, those factors include:

whether the parent and child share an emotional bond and assess whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***K.T.***, 296 A.3d at 1109. If a bond exists, the court must ascertain the effect upon the child of severing the bond. ***Id.*** Because the severing of any parent-child bond may be emotionally painful for a child, the orphans' court cannot preclude termination based solely on evidence of an "adverse" or "detrimental" impact to the child. ***Id.*** at 1110-11. Instead, focusing upon the "child's development, and mental and emotional health," the orphans' court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. ***Id.***

The parent-child bond, however, is "but one part of the overall subsection (b) analysis." The orphans' court must also consider:

the child's need for permanency and length of time in foster care consistent with [the Juvenile Act,] 42 Pa.C.S.A. § 6351(f)(9) and [the Adoption and Safe Families Act], 42 U.S.C. §§ 675(5)(C), (E); whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

***Id.***

When conducting "a full subsection (b) analysis focused upon the child," the orphans' court has "discretion to place appropriate weight on each factor present in the record." ***Id.*** at 1113. However, when "weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind.

- 6 -

Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly." **_T.S.M._**, 71 A.3d at 269.

**_G.W._**, 342 A.3d at 90-91 (cleaned up).

Turning to the merits of this appeal, Mother first argues that the orphans' court abused its discretion in involuntarily terminating her parental rights pursuant to Section 2511(a)(8) and (b).  **_See_** Mother's Brief at 17-21. Specifically, Mother challenges the weight that the orphans' court placed upon the factors relevant to the needs and welfare analysis.  **_See id._** at 19-21.  We disagree.

The orphans' court found that a level of bond existed between Mother and Children, but that "it may not be [] healthy[.]"  Orphans' Court Opinion (T.W.), 9/23/25, at ¶ 3; Orphans' Court Opinion (G.W.), 9/23/25, at ¶ 3. Regarding G.W., the court noted that he "does not wish to actively participate in visits with Mother, and he won't even acknowledge her in some visits." Orphans' Court Opinion (G.W.), 9/23/25, at ¶ 6.

In contrast, the orphans' court found that Children shared a parent-child bond with their foster parents, with whom they have been consistently placed with for two years and are pre-adoptive resources.  **_See_** Orphans' Court Opinion (T.W.), 9/23/25, at ¶ 1, 2, 5; Orphans' Court Opinion (G.W.), 9/23/25, at ¶ 1, 2, 8.  The court further found that the foster parents meet all of Children's needs and provide guidance, safety, and structure.  **_See_** Orphans' Court Opinion (T.W.), 9/23/25, at ¶ 4, 6; Orphans' Court Opinion (G.W.),

9/23/25, at ¶ 7, 9. The court noted that Children do not seek guidance, safety, and structure from Mother. *See id.* The court also emphasized Children's need for permanency and stability. *See* Orphans' Court Opinion (T.W.), 9/23/25, at ¶ 7; Orphans' Court Opinion (G.W.), 9/23/25, at ¶ 10. Accordingly, the court found that CYS presented clear and convincing evidence that termination best served Children's needs and welfare pursuant to the third prong of Section 2511(a)(8) and Section 2511(b). *See* Orphans' Court Opinions, 9/23/25, at 2.

The orphans' court's findings are well-supported by the record evidence. Jennifer Guseman, CYS supervisor who was caseworker for this family from December of 2021 until March of 2023, testified that Children know who Mother is and have a "connection" with her, but that the connection was not "always healthy." N.T., 5/11-12/23, at 147, 162, 177-78. Ms. Guseman explained that Mother prioritizes her own feelings over that of Children, which causes eight-year-old G.W. to shut down and "distance himself." *Id.* at 162-63. She testified that G.W. "expressed fear" of Mother but was unwilling to disclose any specifics and stops speaking when asked further about it. *Id.* at 168. Ms. Guseman stated that G.W. has "never" indicated to her that he desired to reunify with Mother. *Id.* Ms. Guseman testified that G.W. "doesn't even want to participate" or "won't acknowledge" Mother during the visits. *Id.* at 172-73. Breanna Lucas, visit supervisor, mirrored this testimony. *See id.* at 92-93, 96.

With respect to four-year-old T.W., Ms. Lucas testified that T.W. expressed that she did not want to continue participating in visits after Mother made negative implications about the foster mother. *See id.* at 89-90. Ms. Guseman testified that when Mother "has her outbursts[, T.W.] doesn't want any part of that[.]" *Id.* at 169. She described an incident during a court hearing where Mother picked T.W. up while Mother was screaming and falsely accusing the foster parents of physical abuse, which caused T.W. to be "fearful" and "scared." *Id.* at 169, 172.

Additionally, Ms. Guseman described Children's relationship with their foster parents as parental, in contrast to their relationship with Mother, who they do not look to for safety, guidance, or "structure" in their lives. *Id.* at 178. Ms. Guseman stated that Children are safe and have all of their needs met with foster parents. *See id.* at 145-46. As the orphans' court did, we emphasize Children's need for permanency. Children had been in foster care for two years at the time of the hearing in May of 2023, and an additional three years have passed since that time.

Based upon the foregoing, we discern no abuse of discretion or error of law in the orphans' court's needs and welfare analysis with respect to the third prong of Section 2511(a)(8) and Section 2511(b). Indeed, the certified record supports the orphans' court's findings that termination of Mother's parental rights would best serve Children's developmental, physical, and emotional

needs and welfare pursuant to the third prong of Section 2511(a)(8) and (b).
Mother's first issue fails.

In her second issue, Mother argues that the orphans' court abused its discretion when it "refused" to allow additional testimony at a hearing that occurred on September 15, 2025, upon remand. Mother's Brief at 21-22. At that hearing, the orphans' court determined that it would comply with this Court's order based upon the existing record evidence. *See* N.T., 9/15/25, at 4-5. Our review reveals that Mother never requested to present additional evidence to the court and did not object to the court's decision in this regard. *See id.* Thus, because Mother failed to raise her second issue in the orphans' court, it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Even if not waived, Mother's second issue would merit no relief. Our remand instructions allowed the orphans' court "an opportunity to review the record **or** further develop it[.]" *G.W.*, 342 A.3d at 94 (citing *K.T.*, 296 A.3d at 1117) (emphasis added). Therefore, had Mother properly preserved her second issue, we would conclude that the orphans' court was within its discretion to determine that the record did not need to be further developed. *See id.*

In her third and final issue, Mother contends that the orphans' court erred by using the following language in the decrees: "Mother forfeited her parental rights and that the facts averred in the petition were true and

- 10 -

correct." Mother's Brief at 23-24; *see also* Decrees, 9/23/25. Specifically, Mother argues that the court failed to apply the applicable evidentiary burden of clear and convincing evidence by using the above-quoted language. *See id.* Mother further renews her arguments from her first issue that the decrees are not supported by clear and convincing evidence. *See id.* Again, we disagree.

Our review reveals that the orphans' court's opinions which accompanied the decrees found that "the petitioner has met its burden of proof under 23 Pa.C.S.[A.] § 2511(a)(8) and (b)." Orphans' Court Opinions, 9/23/25, at 2. Therefore, it is clear that the orphans' court applied the correct legal standard in this case. *See id.*; *see also M.E.*, 283 A.3d at 829-30. Mother's contention that the termination decrees are not supported by the record fails inasmuch as we have already determined the opposite above.

To the extent that Mother argues that the termination decrees are not supported by clear and convincing evidence because the same petitions were previously denied on this unchanged record, this argument is meritless. We concluded in *G.W.* that the orphans' court's denial of the petitions was legal error because it misapplied the law related to the aforementioned statutory provisions to its factual findings, which were well supported by the record. *See G.W.*, 342 A.3d at 84-95. Thus, the issue was related to the orphans' court's legal analysis, not the court's factual findings. *See id.* No relief is due with respect to Mother's third issue.

In sum, we discern no abuse of discretion or error of law in the termination of Mother's parental rights pursuant to Section 2511(a)(8) and Section 2511(b). *See G.W.*, 342 A.3d at 89-94. Thus, we affirm the decrees.

Decrees affirmed.

Judge Neuman joins the memorandum.

President Judge Lazarus concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/17/2026